UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KENNETH S. ALEXANDER, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 06-1190 (EGS) |
| UNITED STATES OF AMERICA, *et al.*, | ) |
| Defendants. | ) |

MEMORANDUM OPINION

This matter is before the Court upon its initial review of the complaint filed *pro se* and *in forma pauperis*. The Court determines that it lacks subject matter jurisdiction over certain claims and that this venue is improper for litigating the remaining claims. It therefore will dismiss the complaint in part and transfer the remainder to the Central District of California.[1]

I.  FACTUAL BACKGROUND

Plaintiff sues the United States of America, the Department of Justice, the Bureau of Prisons ("BOP") and certain BOP facilities, the State of Alaska, the Alaska Department of Corrections ("DOC") and certain DOC facilities. In addition, plaintiff has named 15 individual defendants (14 BOP employees and one DOC employee). Plaintiff alleges that while incarcerated, he was subjected to cruel and unusual punishment, in violation of the Eighth Amendment, and discrimination based on his race (African American) and religion

---

[1] "Whenever it appears . . . that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3). "The district court of a district in which is filed a case laying venue in the wrong . . . district shall dismiss, or if it be in the interest of justice, transfer such case to any district . . in which it could have been brought." 28 U.S.C. § 1406(a).

(Muslim), in violation of the Fifth and Fourteenth Amendments.  Plaintiff also asserts a claim of negligence.

The claims arose from an injury plaintiff sustained in February 2005 when his hand was caught in a steel cell door at an Alaska correctional facility.  Compl't at 4, 14.  Plaintiff claims that the Alaska officials provided inadequate medical treatment and, because of "altered" transit forms, federal officials denied treatment when he was transferred to BOP's custody.  *Id*. at 17, 18.  Plaintiff alleges that when he sought treatment while confined at the Federal Correctional Institution ("FCI") in Lompoc, California, close to his release date, he was told that "'someone would be inclined to help" if he were not a Muslim.  *Id*. ¶ 19.  When surgery was finally recommended, plaintiff was told that his medical problem should have been treated by the Alaska authorities or the Seatac Federal Detention Center in Seattle, Washington, "and since [his] release was nearing there was no reason [for BOP] to incur the costs."  *Id*. at 20.

When plaintiff began to pursue grievances at Lompoc in August 2005, he was threatened with reclassification and a transfer to a higher security prison.  *Id*. at 21.  In September 2005, plaintiff was transferred from FCI Lompoc, a low security facility, to FCI Victorville I in Adelanto, California, a medium security facility.  *Id*. at 22; *see* http://www.bop.gov (Facility Locator).  Plaintiff alleges that his medical condition worsened as he attempted to work at Victorville.  Eventually, in November 2005, plaintiff was examined by an orthopedic surgeon who "confirmed a 'malunion and deformity of the right 5th metacarpal.'"  Compl't at 24.  Because of "prolonged neglect," the doctor concluded that plaintiff's "hand will never be the same as before [the] accident with or 'without surgery.'"  *Id*. at 25.  Based on this bleak diagnosis, defendants advised plaintiff that surgery was

unnecessary. *Id*. While at Victorville, plaintiff "suffered various forms of harassment and provocation," *id*. at 28, and was denied placement at a halfway house. *Id*. at 25. He was released from his incarceration on March 6, 2006, and currently resides in Anchorage, Alaska. Plaintiff seeks a total of $117 million from all defendants except the United States of America.

### 1. *Claims Against the United States*

Although plaintiff specifically "exempt[s] and exclude[s] from demand for monetary, and/or otherwise, relief" the United States of America, Compl't at 4, a claim against federal agencies and employees in their official capacity is necessarily against the United States. Absent a specific waiver by the government, sovereign immunity bars lawsuits for damages against the United States, its agencies and government employees acting in their official capacity. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Clark v. Library of Congress*, 750 F.2d 89, 102-03 (D.C. Cir. 1984). "[A] waiver of sovereign immunity must be 'unequivocally expressed' and its conditions must be 'strictly observed and exceptions thereto are not to be implied.'" *Blackmon-Malloy v. U.S. Capitol Police Bd.,* 338 F. Supp.2d 97, 103 (D.D.C. 2004) (quoting *Lehman v. Nakshian*, 453 U.S. 156, 160-61 (1981)). The Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, waives the United States' immunity, but only as to certain common law torts. *See* 28 U.S.C. §§ 1346(b)(1), 2679(b). "[T]he United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims." *FDIC*, 510 U.S. at 478. The Court therefore will dismiss the constitutional claims against the United States and the federal defendants in their official capacity for want of subject matter jurisdiction.

To the extent that plaintiff is suing the United States for negligence, he has not demonstrated that he exhausted his administrative remedies. In order to maintain an FTCA claim in federal court, plaintiff must have exhausted his administrative remedies by "first present[ing]

the claim to the appropriate Federal agency. . . ." 28 U.S.C. § 2675.  The exhaustion of administrative remedies is a jurisdictional prerequisite.  *See GAF Corp. v. United States*, 818 F.2d 901, 917-20 (D.C. Cir. 1987); *Jackson v. United States*, 730 F.2d 808, 809 (D.C. Cir. 1984); *Stokes v. U.S. Postal Service*, 937 F. Supp. 11, 14 (D.D.C. 1996).  In the absence of a suggestion that plaintiff exhausted his administrative remedies with respect to the negligence claim, the Court will dismiss the claim for lack of subject matter jurisdiction.[2]

### 2. Claims Against the State of Alaska

The Eleventh Amendment immunizes a state and its agencies or departments from suit in the federal courts, unless immunity is waived.  *See Duncan v. Washington Metropolitan Area Transit Authority,* 214 F.R.D. 43, 45-46 (D.D.C. 2003) (citing cases); accord *U.S. ex rel. K & R Ltd. Partnership v. Massachusetts Housing Finance Agency,* 154 F. Supp.2d 19, 22  (D.D.C. 2001).  A waiver is found "only where stated 'by the most express language or by such overwhelming implications from the test as [will] leave no room for any other reasonable construction.'"  *Morris v. Washington Metropolitan Area Transit Authority*, 781 F.2d 218, 221 (D.C. Cir. 1986) (internal citations omitted).  In the absence of any suggestion of a waiver of immunity here, the Court will dismiss the complaint against the State of Alaska, the Alaska DOC and the DOC facilities on the ground of sovereign immunity.

### 3. Claims Against the Individual Defendants

Plaintiff's constitutional claims against the individual defendants in their personal capacity are authorized by 42 U.S.C. § 1983 with respect to the Alaska official and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) with respect to the

---

[2]  Even if plaintiff could proceed with this claim under the FTCA, it "may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b).  This judicial district satisfies neither condition.

federal officials.  Because the events giving rise to the claims did not occur in the District of Columbia and the defendants are not located here, this venue is improper for litigating these claims.  *See* 28 U.S.C. § 1391(b).  Although plaintiff sustained his injury in Alaska, a substantial part of the alleged wrongdoing occurred in Lompoc and Adelanto, California, by prison officials located there.  Accordingly, the Court finds it in the interests of justice and judicial economy to transfer the remainder of the complaint to the Central District of California.  A separate Order accompanies this Memorandum Opinion.

                                                          SIGNED: EMMET G. SULLIVAN
                                                          UNITED STATES DISTRICT JUDGE

DATE: September 26, 2006